IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.

**OLUWASEUNARA TEMITOPE OSANYINBI,**

        Defendant.

No. 1:15-cr-00172-AA-4
No. 1:18-cv-00391-AA

**OPINION & ORDER**

AIKEN, District Judge.

The matter comes before the Court on Defendant Oluswaseunara Temitope Osanyinbi's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 248. For the reasons set forth below, Defendant's motion under § 2255 is DENIED. Because the motion and record conclusively show that Defendant is entitled to no relief, no evidentiary hearing is required.

## BACKGROUND

In May 2015, Osanyinbi was indicted, along with a number of co-conspirators, for his role in a wide-ranging fraud and identity theft scheme. Osanyinbi and his codefendants were charged with a single count of Conspiracy to Commit Mail and Wire Fraud (Count 1), seven counts of Mail Fraud (Counts 2-8), six counts of Wire Fraud (Counts 9-14), and thirteen counts of Aggravated Identity Theft (Counts 15-27). Osanyinbi retained attorney Lauren Regan to represent him.

In December 2016, Osanyinbi entered into a plea agreement with the Government. Under the agreement, Osanyinbi would plead guilty to a single count each of Conspiracy to Commit Mail and Wire Fraud (Count 1), Mail Fraud (Count 7), and Wire Fraud (Count 12), as well as four

counts of Aggravated Identity Theft (Counts 18, 19, 25, and 26), with the Government agreeing to dismiss the remaining counts of the indictment. ECF No. 121.

With respect to the sentencing guidelines, the parties agreed that Count 1 had a base offense level of seven prior to adjustments, with a two-level enhancement for ten or more victims and a two-level enhancement for use of sophisticated means. The parties also agreed that the amount of loss involved in the offense was greater than $550,000, but less than $9,500,000 and that the Court would determine the precise amount of loss at the time of sentencing. Depending on the amount of loss, the parties agreed that Osanyinbi's base offense level would be enhanced by between fourteen and eighteen levels. The parties also agreed that Osanyinbi's base offense level would be reduced by three for acceptance of responsibility.

The Government agreed that it would recommend a sentence within the applicable guideline range to be consecutive to each mandatory two-year term of imprisonment for the four counts of Aggravated Identity Theft.[1] The parties agreed that the Government was free to seek consecutive sentences for each of the Aggravated Identity Theft counts and that Osanyinbi was free to oppose such a request. As discussed below, the Government ultimately recommended that the sentences for Aggravated Identity Theft run concurrent to one another and consecutive to the sentences imposed for fraud and conspiracy.

As part of the agreement, Osanyinbi waived any right to appeal his conviction and sentence on any ground "except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the court arrives at an advisory guideline range by applying an upward departure under the

---

[1] In cases of Aggravated Identity Theft under 18 U.S.C.§ 1028A, courts are required to impose a two-year term of imprisonment. 18 U.S.C. § 1028A(a)(1). The sentencing court must impose this sentence consecutive to any other term of imprisonment. 18 U.S.C. § 1028A(b)(2). Courts are further prohibited from reducing the sentence for the underlying felony to compensate for the mandatory consecutive sentence imposed for Aggravated Identity Theft. 18 U.S.C. § 1028A(b)(3). Courts may, in their discretion, impose concurrent sentences for multiple counts of Aggravated Identity Theft. 18 U.S.C. § 1028A(b)(4).

provisions of Guideline Chapter 5K." Similarly, Osanyinbi waived any right to file a collateral attack on his conviction or sentence, including a motion under § 2255, on any grounds other than ineffective assistance of counsel.

On December 19, 2016, Magistrate Judge Mark Clarke accepted Osanyinbi's guilty plea pursuant to the plea agreement. ECF No. 119. Judge Clarke ordered that a presentence report ("PSR") be prepared and the case was referred to this Court for sentencing.

Consistent with the plea agreement, the PSR found Osanyinbi's base offense level was seven, with a two-level increase for more than ten victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A), and a two-level increase for use of sophisticated means pursuant to § 2B1.1(b)(10)(C). The PSR found that Osanyinbi was responsible for approximately $2 million in losses for his role in the conspiracy and recommended a sixteen-level enhancement to Osanyinbi's offense level pursuant to § 2B1.1(b)(1)(I).

Although U.S.S.G. § 3B1.2 provides for a two-to-four-level reduction for minimal or minor roles, the probation office was "unaware of any evidence indicating that [Osanyinbi's] conduct was especially limited or that his action were managed, directed, or overseen by others in a manner that may warrant a role reduction." As such, no reduction was recommended for a minor or minimal role.

The PSR recommended a three-level reduction for acceptance of responsibility, for a total offense level of 24 and a criminal history category of I. As such, Osanyinbi's guideline range was 51 to 63 months, with an additional 24 months for the Aggravated Identity Theft counts.

The Government concurred with the PSR's calculation of Osanyinbi's total offense level and guidelines range. ECF No. 142. The Government recommended a sentence of 75 months, reflecting the low end of Osanyinbi's guidelines range with the sentences for all four counts of

Aggravated Identity Theft running concurrent with one another and consecutive to the sentences for conspiracy and fraud.

In his sentencing memorandum, Osanyinbi argued that he was responsible for less than $1.5 million in losses and so his offense level should be enhanced by fourteen rather than sixteen levels. ECF No. 149. Osanyinbi argued for a two-to-four-level reduction for a minimal or minor role and for additional downward departures pursuant to U.S.S.G. §§ 5K2A and 5K2.20. If the requested adjustments and departures were granted, Osanyinbi's total offense level would have been 14 with a guidelines range of 15-21 months, with a consecutive sentence of 24 months for the Aggravated Identity Theft counts.

A sentencing hearing was held on May 18, 2017. ECF Nos. 151, 162, 300. During the sentencing hearing, the Government called witnesses who testified as to the amount of loss and Osanyinbi's role in the conspiracy. Those witnesses were cross-examined by Osanyinbi's counsel. The Court heard argument from the attorneys, as well as a prepared statement from Osanyinbi himself. At the conclusion of the hearing, the Court held that Osanyinbi's total offense level was 24 with a criminal history of I and a guidelines range of 51 to 63 months. After considering the factors set forth in 18 U.S.C. § 3553(a), the Court imposed a below-guidelines sentence of 48 months on Counts 1, 7, and 12. The Court also imposed the mandatory sentence of 24 months for Counts 18, 19, 25, and 26 to run concurrent with one another and consecutive to the sentence imposed on Counts 1, 7, and 12 for a total sentence of 72 months followed by a three-year term of supervised release and restitution in the amount of $876,161.00.[2]

The Court advised Osanyinbi that he had waived his appeal rights as part of his plea agreement, but that if he wished to file a Notice of Appeal, he would be permitted to do so.

---

[2] Osanyinbi is a citizen and national of Nigeria. As discussed at the time of sentencing, Osanyinbi faces the near-certainty of deportation to Nigeria upon completion of his term of imprisonment.

Osanyinbi acknowledged that he understood. Osanyinbi did not file a direct appeal of his sentence. This motion followed.

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-

63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

## DISCUSSION

Osanyinbi seeks to vacate his sentence based on ineffective assistance of counsel. Osanyinbi asserts that his trial counsel, Lauren Reagan, was ineffective for (1) failing to file a direct appeal on his behalf; (2) failing to present evidence of sentencing disparity between Osanyinbi and other defendants sentenced for similar offenses; and (3) for failing to adequately argue for a minor role adjustment. Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the

defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

### I.  Failure to File a Direct Appeal

Osanyinbi argues that Reagan was ineffective for failing to file a direct appeal. A lawyer "who disregards specific instructions to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In cases where there is not an express direction concerning the filing of an appeal, the attorney has a duty "to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. This inquiry is undertaken based on the information counsel knew or should have known at the time. *Id.* In order to show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him

about an appeal, he would have timely appealed." *Id.* at 484. This inquiry is fact-specific and "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485.

In this case, Regan informed Osanyinbi of his right to appeal and the limitations placed on that right by the plea agreement on multiple occasions, including during a meeting shortly after sentencing. Regan Decl. ECF No. 261-1. Regan memorialized the post-sentencing discussion in a May 19, 2017, letter, which the Government has submitted as part of Regan's Declaration. Osanyinbi and Regan remained in contact after sentencing. In August 2017, Osanyinbi wrote to Regan asking for documents from her file, which Regan provided. Osanyinbi wrote to Regan again in January 2018 to request assistance in retrieving photographs held by the Government, which Regan also obliged. Regan affirms that Osanyinbi never expressed any intention or desire to file a direct appeal of his sentence.

As part of his plea agreement, Osanyinbi agreed that the issue of the amount of loss should be submitted to the Court for determination. Osanyinbi waived his right to a direct appeal unless the Court imposed a sentence in excess of the statutory maximum or based on an upward departure, neither of which occurred. After sentencing, Regan explained to Osanyinbi that, because he had received a sentence within the statutory range as expected, she did not believe there were any non-frivolous grounds for appeal.[3] Nevertheless, Regan provided Osanyinbi with detailed written instructions on how to pursue a direct appeal, should he choose to do so. Osanyinbi did not file a direct appeal on his own behalf.

---

[3] In fact, Osanyinbi's sentence represents a modest downward departure from his guidelines range based on the Court's § 3553(a) findings.

On this record, the Court concludes that Regan was not ineffective for failing to file a direct appeal on Osanyinbi's behalf or for failing to consult with Osanyinbi about the possibility of a direct appeal.

## II. Sentencing Disparity Evidence

Osanyinbi asserts that Regan was ineffective for failing to provide the Court with a national sentencing disparity report at the time of sentencing. Osanyinbi contends that such a report would have demonstrated that his sentence was disproportionate to sentences imposed on similarly situated defendants. Although Osanyinbi does not specifically say what the report would have shown, he generally objects to guidelines enhancements based on the amount of loss in fraud cases as unduly punitive.

Among the factors district courts must consider in crafting an individualized sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

> Avoiding sentencing disparity on the basis of easily quantifiable values like amount of loss is a factor that the Guidelines are uniquely well-suited to accomplish. Avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Sentencing Guideline ranges. Since the district judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities. In particular, the Sentencing Commission has expressly concluded that in the case of fraud, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under § 2B1.1.

*United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) (internal quotation marks and citations omitted, alterations normalized).

In cases where the guidelines range has been correctly calculated, sentencing courts are "entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' between [the defendant] and other offenders convicted of similar frauds." *Treadwell*, 593 F.3d at

1011. Additionally, "sentencing disparity is only one factor a court considers in crafting an individualized sentence under § 3553(a)." *Id.* at 1012.

In this case, the Court reviewed the PSR and heard testimony from witnesses, as well as the arguments and submissions of the parties before determining Osanyinbi's guidelines range. Consistent with *Treadwell*, the Court is entitled to rely on that guidelines range in finding that there was no unwarranted discrepancy between Osanyinbi's sentence and those of other defendants convicted of similar frauds. On this record, the Court concludes that Regan was not ineffective for failing to present additional nationwide evidence of similar fraud sentences.

Osanyinbi also argues that he was the least culpable among the co-conspirators in this case and that his sentence is disproportionate relative to the sentences imposed on his co-defendants.[4] Section 3553(a)(6) is meant to "'promote national uniformity in sentencing rather than uniformity among co-defendants in the same case.'" *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007) (quoting *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006)). Relative culpability among co-defendants in the same case is more properly considered as part of the "nature and circumstances of the offense and the history and characteristics of the defendant," under § 3553(a)(1). *Saeteurn*, 504 F.3d at 1181. Regan did argue, with both force and skill, that Osanyinbi was less culpable than his co-defendants and co-conspirators, as discussed in the following section. The Court considered those arguments, along with the other evidence in the record, in crafting Osanyinbi's sentence.

---

[4] Osanyinbi's 72-month sentence is, in fact, substantially lower than the sentences imposed on all but one of his co-defendants and co-conspirators. Osanyinbi's co-defendants were sentenced to 108 months (Olywamuyiwa Abolad Olawoye), 65 months (Lateef Aina Animawun), 108 months (Oluwatobi Rueben Dehinbo), and 156 months (Emmanuel Oluwatosin Kazeem). Michael Oluwasegun Kazeem, the defendant in a separate but related case, was sentenced to 84 months. *United States v. Michael Oluwasegun Kazeem*, Case No. 1:16-cr-00062-AA.

## III. Minor Role Adjustment

Osanyinbi contends that Regan failed to adequately argue for a minor role adjustment pursuant to U.S.S.G. § 3B1.2. Under § 3B1.2, a defendant's offense level may be reduced by between two and four levels to account for the defendant's minimal or minor role in the offense. This adjustment is meant to apply to defendants who are "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, cmt. (n.3(A)). The application of this adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, cmt. (n.3(C)). The Commentary to § 3B1.2 provides a non-exhaustive list of factors courts should consider when weighing a minor or minimal role adjustment. These include (1) the degree to which the defendant understood the scope and structure of the criminal activity; (2) the degree to which the defendant participated in planning or organizing the criminal activity; (3) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision making authority; (4) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (5) the degree to which the defendant stood to benefit from the criminal activity. *Id.*

In Osanyinbi's sentencing memorandum, Regan advocated strongly for a minor or minimal role adjustment. Def. Sentencing Mem., at 10-11. ECF No. 149. Indeed, in her arguments Regan proceeded systematically through the Commentary's list of factors for § 3B1.2. In its sentencing memorandum, the Government offered a detailed opposition to a minor or minimal role adjustment because "an examination of his email/IM accounts and other evidence reveals a level of

participation in the criminal activity that does not warrant a role reduction." Gov. Sentencing Mem., at 15. ECF No. 142.

During the sentencing hearing, the Government's witnesses testified at length about Osanyinbi's role in the criminal enterprise and the benefits he derived from his participation. Sentencing Tr., at 9-26, 33-40, 45-48, 53-55, 68-70. ECF No. 162. The Court also heard argument from both parties on the issue of a minor role adjustment. Sentencing Tr., at 74-75, 87, 89.

Although the Court declined to apply a minor or minimal role adjustment for Osanyinbi, Regan argued for the reduction with skill and zeal. Accordingly, the Court concludes that Regan did not offer ineffective assistance with respect to seeking a minor or minimal role adjustment.

## IV. Certificate of Appealability

A final order in a § 2255 proceeding may not be appealed unless a judge issues a certific2te of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court explained that a certificate of appealability under § 2253(c) is warranted when a habeas prisoner makes "a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 483-84 (internal quotation marks and citation omitted). In this case, the Court concludes that Osanyinbi has failed to make the required showing and so declines to issue a certificate of appealability..

## CONCLUSION

For the reasons set forth above, Defendant's Motion under 28 U.S.C. § 2255, ECF No. 248, is DENIED. No evidentiary hearing is necessary because the allegations in Defendant's motion, when viewed against the record, do not give rise to a claim for relief. The Court declines to issue a certificate of appealability on the basis that Defendant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

It is so ORDERED and DATED this 26th day of February, 2019.

_____
ANN AIKEN
United States District Judge